No. 24-2203

IN THE

# United States Court of Appeals
# for the Third Circuit

---

IN RE: LIPITOR ANTITRUST LITIGATION

DROGUERIA BETANCES, *et al.*

v.

PFIZER INC., *et al.*

---

ON APPEAL FROM THE JUDGMENTS OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY (12-CV-2389), DATED JUNE 6, 2024,
JUDGE PETER G. SHERIDAN, RET., PRESIDING

---

**BRIEF OF DIRECT PURCHASER CLASS
PLAINTIFFS-APPELLANTS**

---

Bruce E. Gerstein
Kimberly Hennings
**Garwin Gerstein & Fisher LLP**
88 Pine Street, 10th Floor
New York, NY 10005
Tel: (212) 398-0055
Fax: (212) 764-6620

David F. Sorensen
Caitlin G. Coslett
**Berger Montague PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604

*Counsel for Direct Purchaser Class Plaintiffs-Appellants*
*(Additional counsel listed on signature page)*

# CORPORATE DISCLOSURE STATEMENT

1.      Plaintiff-Appellant Rochester Drug Cooperative Inc. does not have a parent corporation and no publicly held corporation owns ten percent or more of the entity.

2.      Plaintiff-Appellant Value Drug Co. does not have a parent corporation and no publicly held corporation owns ten percent or more of the entity.

3.      Plaintiff-Appellant Drogueria Betances is a limited liability company organized under the laws of the Commonwealth of Puerto Rico, and therefore, it is a nongovernment corporate party for purposes of Federal Rule of Appellate Procedure 26.1, and thus need make no filing thereunder. Nonetheless, it is wholly owned by DBI Management LLC and no publicly held corporation owns ten percent or more of the membership interests of either entity.

4.      Plaintiff-Appellant Stephen L. LaFrance Holdings, Inc. has a parent corporation, Walgreen Co., which is owned by Walgreens Boots Alliance, Inc. Walgreens Boot Alliance, Inc. owns ten percent or more of Stephen L. LaFrance Holdings, Inc.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS........................................................................... ii

TABLE OF CITATIONS ...................................................................... iv

JURISDICTIONAL STATEMENT ..............................................................1

STATEMENT OF ISSUES FOR REVIEW ...................................................2

STATEMENT OF RELATED PROCEEDINGS AND CASES .............................3

STATEMENT OF THE CASE..................................................................4

I.      Relevant Facts...................................................................4

        A.      Lipitor and the Unlawful Reverse Payment ..........................5

        B.      Absent the Reverse Payment, Generic Lipitor Would Have
                Entered the Market Earlier ...................................................8

        C.      The Class Includes 63 Geographically Dispersed Members,
                Many With Small Claims....................................................10

        D.      When Courts Have Declined to Certify Similar, Smaller
                Classes, Many Former Absent Class Members Did <u>Not</u> Sue and
                There Were Numerous Discovery Disputes in Subsequent
                Joinder Actions................................................................11

II.     Procedural History .............................................................19

        A.      Pleadings and Discovery ...................................................19

        B.      Summary Judgment..........................................................21

        C.      Class Certification and Settlement with Pfizer .....................22

III.    Rulings Presented for Review ...............................................24

SUMMARY OF ARGUMENT ...............................................................25

STANDARD OF REVIEW ..................................................................30

ARGUMENT ...................................................................................31

I.  The District Court Erred by Issuing an Improper Advisory Opinion ...........31

II. The District Court Erred By Ignoring That the 63-Member Class Here
    Presumptively Satisfies Rule 23(a)(1) and Faces a "Relaxed Burden"
    Under Rule 23(a)(1)...................................................................35

III. The District Court Erred in Applying the *Modafinil* Factors ........................38

    A.  The District Court Erred in Finding That "Judicial Economy"
        Does Not Support Finding Rule 23(a)(1) Met .....................................39

    B.  The District Court Erred in Finding That "Claimants' Ability
        and Motivation to Litigate as Joined Plaintiffs" Does Not
        Support Finding Rule 23(a)(1) Met...................................................42

    C.  The District Court Erred in Giving Little Weight to the Fact
        That the Class Here is Geographically Dispersed..............................50

IV. CONCLUSION.............................................................................52

# TABLE OF CITATIONS

Page(s)

**Cases**

*Allen v. Ollie's Bargain Outlet, Inc.*,
 37 F.4th 890 (3d Cir. 2022).............................................................. 36, 37

*Already, LLC v. Nike, Inc.*,
 568 U.S. 85 (2013) ................................................................................ 32

*Am. Sales Co., LLC v. Pfizer, Inc.*,
 14-cv-00361, 2017 WL 3669604 (E.D. Va. July 28, 2017) ................ 35

*Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Emp. of Am., Div.
 998 v. Wisconsin Emp't Relations Bd.*,
 340 U.S. 416 (1951) .............................................................................. 32

*Amchem Prod., Inc. v. Windsor*,
 521 U.S. 591 (1997) .............................................................................. 30

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
 568 U.S. 455 (2013) .............................................................................. 34

*Baer v. Harmon L. Offs., P.C.*,
 08-cv-30063, 2009 WL 102698 (D. Mass. Jan. 14, 2009) .................. 34

*Bencosme v. Stillman Law Office, LLC*,
 18-cv-03304, 2020 WL 1955826 (D.N.J. Apr. 23, 2020)..................... 33

*Bergen Drug Co. v. Parke, Davis & Co.*,
 307 F.2d 725 (3d Cir. 1962).................................................................. 47

*Broessel v. Triad Guar. Ins. Corp.*,
 04-cv-0004, 2007 WL 2155691 (W.D. Ky. July 25, 2007)................... 34

*Broking v. Green Brook Buick GMG Suzuki*,
 15-cv-01847, 2017 WL 3610490 (D.N.J. Aug. 22, 2017)..................... 33

*Carr v. Flowers Foods, Inc.*,
 15-cv-06391, 2019 WL 2027299 (E.D. Pa. May 7, 2019) .................... 37

*Clark v. Governor of New Jersey*,
 53 F.4th 769 (3d Cir. 2022)................................................................... 31

*Corbin v. Time Warner Ent.-Advance/Newhouse P'ship*,
 821 F.3d 1069 (9th Cir. 2016)............................................................... 33

iv

*Cox v. Am. Cast Iron Pipe Co.*,
 784 F.2d 1546 (11th Cir. 1986) ............................................................ 36

*FTC v. Actavis, Inc.*,
 570 U.S. 136 (2013) .................................................................... 26, 41

*Gates v. Rohm & Haas Co.*,
 655 F.3d 255 (3d Cir. 2011) .................................................................... 31

*Hamilton v. LLM Mgmt., Inc.*,
 13-cv-02932, 2016 WL 589869 (E.D. Pa. Feb. 11, 2016) ................................. 33

*Hawaii v. Standard Oil Co.*,
 405 U.S. 251 (1972) .................................................................... 29

*Ill. Brick Co. v. Ill.*,
 431 U.S. 720 (1977) .................................................................... 46

*In re AndroGel Antitrust Litig. (No. II)*,
 09-md-02084, 2018 WL 2984873 (N.D. Ga. June 14, 2018) ............................. 13

*In re HIV Antitrust Litig.*,
 19-cv-02573, 2022 WL 22609107 (N.D. Cal. Sept. 27, 2022) ........................... 35

*In re KBR, Inc.*,
 893 F.3d 241 (4th Cir. 2018) .................................................................... 33

*In re Lamictal Direct Purchaser Antitrust Litig.*,
 957 F.3d 184 (3d Cir. 2020) .................................................................... 31

*In re Lidoderm Antitrust Litig.*,
 No. 14-md-02521, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017) ................... 47, 49

*In re Lipitor Antitrust Litig.*,
 855 F.3d 126 (3d Cir. 2017) .................................................................... 3

*In re Lipitor Antitrust Litig.*,
 868 F.3d 231 (3d Cir. 2017) ................................................................ Passim

*In re Loestrin 24 Fe Antitrust Litig.*,
 13-md-02472, 2019 WL 3214257 (D.R.I. July 2, 2019) .............................. 36, 47

*In re Modafinil Antitrust Litig.*,
 837 F.3d 238 (3d Cir. 2016) ................................................................ Passim

*In re Namenda Direct Purchaser Antitrust Litig.*,
 331 F. Supp. 3d 152 (S.D.N.Y. 2018) .................................................................... 35

*In re Niaspan Antitrust Litig.*,
 397 F. Supp. 3d 668 (E.D. Pa. 2019) .............................................. 35, 42

*In re Niaspan Antitrust Litig.*,
    67 F.4th 118 (3d Cir. 2023)..................................................................... 39

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998)..................................................................... 30

*In re Solodyn Antitrust Litig.*,
    17-md-02503, 2017 WL 4621777 (D. Mass. Oct. 16, 2017).............................. 35

*In re Suboxone Antitrust Litig.*,
    421 F. Supp. 3d 12 (E.D. Pa. 2019) ............................................... 37, 49

*In re Zetia (Ezetimibe) Antitrust Litig.*,
    342 F.R.D. 95 (E.D. Va. 2022) .......................................................... 14

*King Drug Co. of Florence v. Cephalon, Inc.*,
    309 F.R.D. 195 (E.D. Pa. 2015)........................................................... 13

*King Drug Co. of Florence v. Smithkline Beecham Corp.*,
    791 F.3d 388 (3d Cir. 2015)............................................................... 16

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*,
    06-cv-1797, 2017 WL 3705715 (E.D. Pa. Aug. 28, 2017)........................... 12, 13

*Marcus v. BMW of N. Am., LLC*,
    687 F.3d 583 (3d Cir. 2012)............................................................... 39

*Mielo v. Steak 'n Shake Operations, Inc.*,
    897 F.3d 467 (3d Cir. 2018)............................................................... 36

*N. Carolina v. Rice*,
    404 U.S. 244 (1971) ........................................................................ 32

*People of State of Cal. v. San Pablo & T.R. Co.*,
    149 U.S. 308 (1893) ........................................................................ 32

*Pfizer, Inc. v. Ranbaxy Lab'ys Ltd.*,
    457 F.3d 1284 (Fed. Cir. 2006)............................................................. 5

*Pfizer, Inc. v. Ranbaxy Lab'ys, Ltd.*,
    525 F. Supp. 2d 680 (D. Del. 2007)........................................................ 5

*Pfizer, Inc. v. Teva Pharms. USA, Inc.*,
    429 F.3d 1364 (Fed. Cir. 2005)............................................................. 7

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ........................................................................ 50

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010) ........................................................ 36

*Reiter v. Sonotone Corp.*,
442 U.S. 330 (1979) ........................................................................ 29

*Rochester Drug Co-Operative, Inc. v. Braintree*,
796 F. Supp. 2d 560 (D. Del. 2011) ................................................ 47

*Saeger v. Pac. Life Ins. Co.*,
305 F. App'x 492 (9th Cir. 2008) ..................................................... 33

*Saroza v. Lyons, Doughty & Veldhuis, P.C.*,
17-cv-00523, 2021 WL 2549273 (D.N.J. June 22, 2021) ................. 33

*Smith v. Johnson & Johnson*,
593 F.3d 280 (3d Cir. 2010) ....................................................... 33, 34

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001) ............................................................ 36

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ........................................................................ 34

*Value Drug Co. v. Takeda Pharms., U.S.A., Inc.*,
21-cv-03500, 2023 WL 2314911 (E.D. Pa. Feb. 28, 2023).... 17, 40, 48

*Wass v. Dolgencorp, LLC*,
13-cv-03267, 2014 WL 5307505 (W.D. Mo. Oct. 16, 2014) ............. 33

*Wujick v. Dale & Dale, Inc.*,
43 F.3d 790 (3d Cir. 1994) .............................................................. 31

**Statutes**

15 U.S.C. §1 ...................................................................................... 1

15 U.S.C. §2 ...................................................................................... 1

15 U.S.C. §4 ................................................................................... 1, 2

15 U.S.C. §15(a) ............................................................................ 1, 2

28 U.S.C. §1291 ................................................................................ 2

28 U.S.C. §1331 ................................................................................ 2

28 U.S.C. §1337 ................................................................................ 2

## Rules

Fed. R. Civ. P. 23 ...................................................................... Passim

Fed. R. App. P. 26.1 ...................................................................... i

Fed. R. App. P. 28(i) ..................................................................... 4

Fed. R. App. P. 32 ........................................................................ 55

## Other Authorities

1 Newberg and Rubenstein on Class Actions §3.12 (6th ed. 2022) ...................... 36

5 MOORE'S FEDERAL PRACTICE – CIV., §23.22
  (Matthew Bender 3d ed.) ............................................................. 37, 47

# JURISDICTIONAL STATEMENT

Plaintiffs-Appellants ("DPPs" or "Plaintiffs")[1] filed this antitrust case on behalf of a proposed class of direct purchasers ("DPP Class" or "Class")[2] under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§1 & 2 and Section 4 of the Clayton Act, 15 U.S.C. § 15(a), against Defendants Pfizer, Inc. and certain of its affiliates and subsidiaries ("Pfizer"), manufacturer of the blockbuster branded drug Lipitor, and Ranbaxy Pharmaceuticals, Inc. and its affiliates ("Ranbaxy"), a

---

[1] "DPPs" or "Plaintiffs" are Direct Purchaser Class Plaintiffs-Appellants Drogueria Betances, LLC, Value Drug Company, Rochester Drug Co-Operative, Inc., and Stephen L. LaFrance Holdings, Inc. Professional Drug Company, Inc. is not pursuing this appeal.

[2] The proposed Class includes:

> All persons or entities in the United States and its territories who purchased Lipitor or its AB-rated bioequivalent generic products directly from any of Defendants at any time during the period June 28, 2011 through May 28, 2012 (the "Class Period").

> Excluded from the proposed Class are the defendants and their officers, directors, management, employees, subsidiaries, or affiliates, all federal governmental entities, and all persons or entities that (i) purchased Lipitor directly from Pfizer for the first time during the Class Period after November 30, 2011, but did not purchase generic Lipitor directly from Ranbaxy during the Class Period; and (ii) all persons or entities that purchased Lipitor directly from Pfizer after November 30, 2011 that did not also purchase generic Lipitor after November 30, 2011.

JA0118 (DPP Class Certification Opinion [hereinafter "Op."]).

manufacturer of generic Lipitor. The District Court had jurisdiction under Section 4(a) of the Clayton Act, 15 U.S.C. §15(a) and 28 U.S.C. §§1331 and 1337.[3]

On June 6, 2024, after already granting summary judgment in favor of Ranbaxy and against all plaintiffs as to causation, the District Court denied DPPs' motion to certify the DPP Class in a 23-page opinion. JA0117 (Op.); JA0140 (Order denying class certification).[4] The DPPs timely filed a notice of appeal. JA0013-14.[5] This Court has jurisdiction over the appeal under 28 U.S.C. §1291.

## STATEMENT OF ISSUES FOR REVIEW

1.      Did the District Court err by issuing an improper, 23-page advisory opinion on class certification after granting summary judgment to Ranbaxy as to causation, which rendered DPPs' class certification motion moot and deprived the District Court of jurisdiction to issue an advisory opinion on the motion?

2.      Did the District Court err by disregarding that the DPP Class includes more than 40 members in evaluating whether Rule 23(a)(1)'s numerosity

---

[3] The District Court had jurisdiction over this action but, as noted below in Argument §I, it lacked jurisdiction to issue its improper advisory opinion on the mooted class certification motion.

[4] Pfizer also moved for summary judgment as to causation and opposed class certification but settled before the District Court ruled on those motions. *See* JA0033 n.1 (summary judgment Opinion); JA0117 n.1 (Op.). Accordingly, Pfizer is not party to this appeal.

[5] DPPs also filed a timely notice of appeal of the District Court's summary judgment ruling. JA0011-12.

requirement was satisfied and by failing to apply the "relaxed burden" applicable to classes with more than 40 members as required under this Court's precedent?

3.  Did the District Court err in applying the factors identified in *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 254 (3d Cir. 2016), *as amended* (Sept. 29, 2016), in finding that Rule 23(a)(1) was not met by the proposed 63-member class?

The District Court (Sheridan, J.) ruled on class certification on June 6, 2024. JA0117 (Op.); JA0140 (Order denying class certification).

## STATEMENT OF RELATED PROCEEDINGS AND CASES

This case was previously before this Court on appeal from the District Court's orders dismissing DPPs' claims. *In re Lipitor Antitrust Litig.*, 868 F.3d 231 (3d Cir. 2017). The prior appeal was consolidated with an appeal in another case, before the same District Court, concerning the drug Effexor XR brought by many of the same plaintiffs and which raised similar issues. Order, *In re Lipitor Antitrust Litig.*, 14-4202, Doc. 003112011327 (3d. Cir. Jul. 8, 2015). On April 19, 2017, this Court held that it—rather than the Federal Circuit—had jurisdiction to hear both appeals. *See In re Lipitor Antitrust Litig.*, 855 F.3d 126, 139 (3d Cir. 2017).

On August 21, 2017, this Court reversed the District Court's dismissal of DPPs' claims in this case (and also reversed the dismissal in the case involving Effexor XR). *Lipitor*, 868 F.3d 231.

On June 6, 2024, the District Court granted summary judgment to Defendant Ranbaxy as to causation (JA0116 (Order granting summary judgment)), and thereafter denied DPPs' motion for class certification (JA0140 (Order denying class certification)) and denied a motion seeking certification of a proposed class of end-payors (JA0198 (Order denying class certification)). DPPs and the other plaintiffs in this action have appealed the District Court's grant of summary judgment to Defendant Ranbaxy on the issue of causation (24-2184, 24-2185, 24-2189, 24-2194, 24-2202, and 24-2256), and the end-payors also have appealed the denial of certification of the proposed end-payor class (24-2257). This Court consolidated this appeal with these other appeals for briefing, argument, and disposition by Order dated August 1, 2024 (Doc. 29).

## STATEMENT OF THE CASE

### I.  Relevant Facts

The relevant facts are summarized in the Brief of Individual Retailer Appellants ("Retailers' Brief") which DPPs join,[6] and in this Court's prior opinion reversing the District Court's order dismissing DPPs' claims, *Lipitor*, 868 F.3d 231. We summarize the facts briefly below.

---

[6] As noted in 24-2202, pursuant to Fed. R. App. P. 28(i), DPPs join in full and incorporate Retailers' Brief, filed on October 29, 2024 in 24-2184, 24-2185, 24-2189, and 24-2194, which shows that Judge Sheridan committed reversible error in granting summary judgment as to causation.

## A.    Lipitor and the Unlawful Reverse Payment

In the spring of 2008, Pfizer's thirteen-year monopoly on Lipitor, then the largest selling prescription drug ever, was nearing its end.[7] The exclusivities associated with the Lipitor compound patent, U.S. Patent No. 4,681,893 ("'893 Patent"), would expire on March 24, 2010, and courts had invalidated the relevant claim in U.S. Patent No. 5,273,995 ("'995 Patent").[8] With its Lipitor monopoly set to expire with the '893 Patent in March 2010, starting in mid-2007 Pfizer tried to get the United States Patent and Trademark Office ("PTO") to reissue the '995 Patent to extend its monopoly until June 28, 2011,[9] but Ranbaxy, seeking to sell generic Lipitor, protested reissuance.[10] Ranbaxy argued to the PTO that issuance of

---

[7] DPPs' Consolidated Amended Class Action Complaint ("Compl."), ECF 472, ¶¶68-70. Unless otherwise noted, ECF citations are to the District Court docket, 3:12-cv-2389 (D.N.J.). *See also* JA5606 (Karst Rpt. ¶57) ("[I]n late 2006, the district court amended its final judgment order" allowing approval of generic Lipitor upon "expiration of the '893 Patent, including pediatric exclusivity, on March 24, 2010.") (citing *Pfizer, Inc. v. Ranbaxy Lab'ys Ltd.*, 03-cv-00209, D.I. 338 (D. Del. Nov. 7, 2006)).

[8] Compl. ¶¶86-88; *Pfizer, Inc. v. Ranbaxy Lab'ys Ltd.*, 457 F.3d 1284, 1292 (Fed. Cir. 2006) (claim 6 of '995 Patent invalid); *Pfizer, Inc. v. Ranbaxy Lab'ys, Ltd.*, 525 F. Supp. 2d 680, 690 (D. Del. 2007) (enjoining FDA approval of Ranbaxy's ANDA until March 24, 2010 expiration of '893 Patent pediatric exclusivity); JA5605 (Karst Rpt. ¶56).

[9] JA5638 (10/10/2007 Pfizer Reissue Application); Compl. ¶69; JA5611 (Karst Rpt. ¶72) (June 28, 2011 patent expiration).

[10] Compl. ¶102; JA5651 (5/17/2007 Protest); JA5679 (8/22/2007 Protest); JA5682 (12/4/2007 Protest).

the original '995 Patent relied on misleading and fraudulent data submitted by Pfizer, data Pfizer's own scientists later disavowed.[11]

On June 17, 2008, without the '995 Patent having been reissued, Pfizer and Ranbaxy entered into a reverse payment agreement to delay Ranbaxy's generic Lipitor entry until November 30, 2011.[12] Pfizer admitted to the investing public that its Lipitor patent protection would not extend beyond June 2011,[13] yet Pfizer and Ranbaxy agreed to delay generic entry until November 30, 2011. Under the agreement, Pfizer paid Ranbaxy by, *inter alia*, releasing Ranbaxy from hundreds of millions of dollars in liability for infringing a Pfizer patent covering the drug Accupril in return for a pretextual payment of just $1 million, which this Court characterized as a "paltry" amount because Pfizer was "likely to be successful" and recover "hundreds of millions of dollars" in Accupril damages. *Lipitor*, 868 F.3d at

---

[11] Compl. ¶¶98-105; JA5687 (12/4/2007 Protest); JA5753-54 (Pfizer's 6/7/2007 disclosure) (Pfizer admits "some of that biological data is now understood to be inaccurate").

[12] Compl. ¶¶145-47; JA5763 (Ranbaxy-Pfizer Settlement Agreement).

[13] JA6697 (Pfizer 1/22/2007 Analyst Mtg.) (Pfizer's General Counsel stated that, through reissuance, "we will be able to extend the patent life of Lipitor through June 2011."); Compl. ¶205 (In 2005, before the '995 Patent was invalidated, Pfizer's former Chairman and CEO stated: "There are dozens of generic drug manufacturing companies with a red circle around June 28, 2011. That's the day the ['995] patent for [Lipitor] expires . . . Shortly thereafter a number of generic alternatives to Lipitor will be introduced[.]").

258.[14] In exchange for this large payment, Ranbaxy agreed to: (i) delay its generic Lipitor entry until November 30, 2011 (roughly five months *after* the latest-expiring patent exclusivity with any relevance to Ranbaxy's pending Abbreviated New Drug Application ("ANDA") for generic Lipitor),[15] (ii) maintain a bottleneck blocking later-filed ANDAs for generic Lipitor, (iii) not contest the validity of certain process patents purportedly covering Lipitor and its generics, and (iv) cease protesting Pfizer's application for reissuance of the '995 Patent.[16]

The release of hundreds of millions of dollars in liability for Accupril far exceeded Pfizer's avoided litigation costs in the Lipitor patent litigation, and, as

---

[14] That Pfizer was very likely to win the Accupril litigation against Ranbaxy is further evidenced by the Accupril court granting Pfizer's request for a preliminary injunction on March 29, 2005, forcing Ranbaxy to exit the market on March 31, 2005 and concluding that "there can be little question that the Ranbaxy formulation literally infringes claim 16 of the '450 Patent" and that Pfizer "is likely to succeed on the merits[.]" JA6033, JA6036 (3/29/2005 Hearing). The Federal Circuit affirmed the injunction. *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1377 (Fed. Cir. 2005) ("Ranbaxy's challenges to the district court's finding are easily rejected"); *id.* at 1381 (Pfizer "establishe[d] a strong showing of likely infringement of a valid and enforceable patent"). Pfizer itself represented that by launching "at risk," Ranbaxy "expose[d] themselves to liability for hundreds of millions of dollars for lost profit damages." JA6040 (5/22/2006 Hearing). Similarly, Ranbaxy's in-house counsel admitted in sworn trial testimony that Ranbaxy was "on the hook for [a] huge amount of damages[.]" JA6472 (Jury Trial Transcript, *Walgreen Co., et al. v. Cephalon Inc., et al.*, No. 2:09-cv-3956 (E.D. Pa.)).

[15] Compl. ¶¶181, 184, 229-32; JA5763 (Ranbaxy-Pfizer Settlement Agreement).

[16] Compl. ¶¶181-84; JA5763 (Ranbaxy-Pfizer Settlement Agreement).

this Court recognized, plausibly constituted a large, unjustified reverse payment to Ranbaxy in exchange for its agreement to delay generic Lipitor.[17]

## B. Absent the Reverse Payment, Generic Lipitor Would Have Entered the Market Earlier

Pursuant to the reverse payment agreement, Ranbaxy launched its generic Lipitor on November 30, 2011.[18] DPPs allege that, absent Pfizer's reverse payment, Ranbaxy would have launched its generic Lipitor product earlier.[19] The District Court prohibited discovery, however, necessary for the DPPs to present a full case on causation, that would have included an economic model showing an alternative generic entry date or date range that would have been in the mutual economic interests of Pfizer and Ranbaxy absent Pfizer's large reverse payment. *See* Retailers' Brief, §I, Relevant Facts.

Before entering into their reverse payment agreement on June 17, 2008, both Pfizer and Ranbaxy anticipated Ranbaxy launching its generic Lipitor no later than June 28, 2011. Pfizer's top executives consistently and publicly stated that Pfizer

---

[17] *Lipitor*, 868 F.3d at 256 (recognizing plausibility of Plaintiffs' allegations that any "actual saved litigation costs . . . fail to explain the hundreds of millions of dollars of liability released by Pfizer"); *id.* at 258 ("Pfizer's release of the Accupril claims plausibly sought to induce Ranbaxy to delay its entry into the Lipitor market and was not in exchange for Ranbaxy's $1 million . . . Pfizer and Ranbaxy's settlement agreement is therefore properly subject to antitrust scrutiny.") (citation omitted).

[18] JA5763 (Ranbaxy-Pfizer Settlement Agreement).

[19] JA5533 (Leitzinger Decl. Ex. 5).

expected generic entry in June 2011,[20] and Pfizer's contemporaneous documents confirm that Pfizer anticipated generic entry no later than June 2011.[21] Ranbaxy recognized that, even if reinstated, the '995 Patent exclusivity would end in June 2011.[22]

Had it not been paid off by Pfizer, Ranbaxy and Pfizer would have been economically motivated to reach a settlement with an earlier no-payment entry date to launch generic Lipitor, which at the time of the agreement in 2008, was the most widely prescribed drug in the world, with annual U.S. sales exceeding $8 billion the year prior to generic entry in November 2011.[23] Indeed, within six months of generic competition starting on November 30, 2011, generics had captured nearly 60% of brand Lipitor prescriptions.[24] For the reasons set forth in the Retailers'

---

[20] *See supra*, n.13. *See also* JA6692 (12/4/2006 Pfizer CEO Interview) (In December 2006, after the invalidation of the '995 patent, Pfizer's CEO stated: "we expect to lose exclusivity on Lipitor in June of 2011.").

[21] *See, e.g.*, JA7756-57 (8/13/2007 slides forecast generic entry in June 2011 or "earlier"); JA7769 (12/19/2007 slides show generic entry in 2010).

[22] *E.g.*, JA6743 (9/17/2006 Ranbaxy Email Attachment) (recognizing "gain[s] for Pfizer if Ranbaxy does not launch till June 2011"); JA6745 (8/3/2006 Ranbaxy Press Release) ('995 Patent invalidation created opportunity to "bring the launch date forward" from June 2011).

[23] JA5495 (Leitzinger Decl. ¶20).

[24] JA5496 (Leitzinger Decl. ¶22). Over the first six months of generic competition, generic Lipitor was priced at over a 50% discount below the price of the brand. *Id*. Pfizer would have been economically motivated to reach a settlement because absent a settlement, Pfizer was likely to lose the patent litigation, and face

Brief, Ranbaxy would have obtained approval from the U.S. Food and Drug Administration ("FDA") earlier and been able to launch earlier absent the large reverse payment that Pfizer paid to Ranbaxy. The District Court, however, prohibited DPPs from taking the discovery needed to develop a complete "but for" entry scenario.

### C. The Class Includes 63 Geographically Dispersed Members, Many With Small Claims

As the District Court correctly recognized, the Class here consists of 63 members, each a direct purchaser of brand and/or generic Lipitor as identified in Defendants' own sales data. JA0126 (Op.).[25] Each of the 63 Class members is a separate legal entity, including those that Defendants argued had merged with or were acquired by other Class members.[26] Class members are located in 27 states

---

even earlier generic entry and an even earlier loss of its brand Lipitor sales to generic Lipitor.

[25] *See also* JA5534 (Leitzinger Decl. at Ex. 6) (listing 65 class members); ECF 1222 (DPPs' Class Certification Br., 19, n.61) (DPP counsel instructed Dr. Leitzinger that two of the 65 should not be listed separately, leaving 63 Class members).

[26] JA7895 (Stangle Rpt. Ex. 11) (listing Class members that Dr. Stangle argues should be combined) (Ranbaxy's expert); JA6945-60 (certificates of good standing for each Class member which Dr. Stangle identifies showing that each is an existing, separate legal entity; note that Dik Drug and Kinray were removed from the class list, *supra*, n.25). Ranbaxy's expert does not dispute that each Class member is a separate legal entity. JA6917-20 (Stangle Tr. at 80:19-82:4, 86:3-11, 88:18-89:2).

and Puerto Rico, as the District Court recognized. JA5535 (Leitzinger Decl. Ex. 7) (showing Class members' geographic dispersion); JA0137 (Op.).

Many Class members have relatively small claims. As the District Court acknowledged, eight Class members have claims, even with treble damages included, under $70,000 each, and 25 are under $1 million each. JA0133 (Op.).[27] Six have claims of <u>less than $10,000 each</u>.[28] These damages estimates are based on the assumption that a factfinder would find that absent the reverse payment, Ranbaxy would have launched its generic in June 2011, five months earlier than Ranbaxy actually launched, in November 2011.[29] A later but-for launch would mean even lower individual damages.[30]

## D. When Courts Have Declined to Certify Similar, Smaller Classes, Many Former Absent Class Members Did <u>Not</u> Sue and There Were Numerous Discovery Disputes in Subsequent Joinder Actions

In five similar antitrust cases in which courts have found Rule 23(a)(1) not met by similar, but smaller, proposed classes of direct pharmaceutical

---

[27] *See also* JA7683-84, JA7709 (Leitzinger Decl. ¶¶57-60 & Ex. 12).

[28] *See also* JA7709 (Leitzinger Decl. Ex. 12).

[29] JA5497 (Leitzinger Decl. ¶24). Because DPPs were deprived of the necessary discovery, they asked their expert (Dr. Leitzinger) to make assumptions about the date of but-for generic launch.

[30] JA5539 (Leitzinger Decl. Ex. 11A) (showing estimated aggregate Class damages dropping by approximately 80% as the assumed but-for generic launch date moves from June 28, 2011 to November 1, 2011).

purchasers—proposed classes that included many of the same entities that are Class members here—many potential class members did not join a subsequent joinder action after class certification was denied. This consistent pattern demonstrates that many direct purchasers of prescription drugs lack the ability and motivation to litigate as joined plaintiffs, including because of the smallness of their claims and potential retaliation from defendants (their suppliers).

*Modafinil.* In *King Drug Co. of Florence, Inc. v. Cephalon, Inc.* ("*Modafinil*"), a case like this one challenging an allegedly unlawful reverse payment that delayed generic competition, the district court denied class certification of a proposed class of 24-25 members on remand from this Court's ruling in *In re Modafinil Antitrust Litig.*, 837 F.3d 238 (3d Cir. 2016).[31] In connection with a supplemental motion for class certification, some absent class members submitted declarations and testified that they would not sue due to the risk of retaliation.[32] Despite a prior class-wide settlement against some defendants

---

[31] *See King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 06-cv-1797, 2017 WL 3705715, at *1-2, *7 (E.D. Pa. Aug. 28, 2017).

[32] *See In re Zetia Antitrust Litig.*, 18-md-02836, ECF 872-6, Tr. 39:22-40:25 (E.D. Va. Feb. 20, 2020) (excerpts of transcript from 4/18/2017 *Modafinil* class certification oral argument describing *Modafinil* absent class members' declarations and testimony regarding fear of retaliation).

for $512 million, 4-5 former class members[33] did not file suit after class certification was denied.[34]

    ***AndroGel.*** In *King Drug Co. v. Abbott Labs* ("*AndroGel*"), another reverse payment case challenging delayed generic competition, the proposed class included 33 members (4 class representatives and 29 absent class members).[35] Only 13 filed a joinder complaint (in a different jurisdiction) after class certification was denied.[36] In other words, 16 former class members—nearly half of the proposed 33-member class—did not sue, whether via joinder or individual action, even though the court largely had denied defendants' motion for summary judgment previously.[37] The former class members that filed suit did so in a

---

[33] The district court found the class had either 24 or 25 members, *King Drug Co. of Florence, Inc.*, 2017 WL 3705715, at *7, and so the number of absent class members that did not sue is 4 or 5.

[34] *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 2:06-cv-1797, ECFs 795-3, ¶8(a) ($512 million settlement), 870 (approving settlement), 1108-1, ¶14 (listing 13 joinder plaintiffs, one of which was AmerisourceBergen Corp., a parent company that was not a named class member in *Modafinil*); *King Drug Co. of Florence v. Cephalon, Inc.*, 309 F.R.D. 195, 216 (E.D. Pa. 2015) (eight class representatives).

[35] *In re AndroGel Antitrust Litig. (No. II)*, 09-2084, ECF 1747 at 2, n.1, 5 (N.D. Ga. July 16, 2018).

[36] *King Drug Co. v. Abbott Labs.*, 2:19-cv-03565, ECF 1, ¶42 (E.D. Pa. Aug. 7, 2019) (listing plaintiffs in joinder complaint, including AmerisourceBergen Corp., a parent company that was not a previously named class member).

[37] *In re AndroGel Antitrust Litig. (No. II)*, 09-md-02084, 2018 WL 2984873 (N.D. Ga. June 14, 2018).

different jurisdiction (the Eastern District of Pennsylvania) from the class action (the Northern District of Georgia), and the case remained in Pennsylvania following denial of defendants' motion to transfer the case to Georgia.[38] Five years after denial of class certification, the parties were still in discovery when proceedings were stayed in light of settlement discussions.[39]

*Zetia.* In *In re Zetia Antitrust Litig.*, another reverse payment case,[40] the class included 35 members,[41] 3 class representatives plus 32 former absent class members.[42] Of the 32 former absent class members, only 16 filed joinder complaints after class certification was denied.[43] Two former *Zetia* class

---

[38] *King Drug Co. v. Abbott Labs.*, 2:19-cv-03565, ECF 98 (E.D. Pa. Jan. 6, 2020) (denying motion to transfer).

[39] *Id.*, ECFs 398 (ordering 10/28/2024 fact discovery deadline), 430 (order staying action) (E.D. Pa.).

[40] *In re Zetia (Ezetimibe) Antitrust Litig.*, 342 F.R.D. 95 (E.D. Va. 2022) (denying class certification).

[41] *Zetia*, 18-md-02836, ECF 1356-1 (list of putative class members); ECF 1583-1 at 1 (redline of complaint adding joinder plaintiffs, originally listing three named plaintiffs).

[42] *See id.*, ECF 1583-1 at 1 (redline of complaint adding joinder plaintiffs, originally listing three named plaintiffs).

[43] *Compare id.*, ECF 1583-1, ¶10(a)-(n) (listing plaintiffs in joinder complaint), *with id.*, ECF 1356-1 (list of class members). Multiple joinder complaints were filed, and the former class members that filed retained six law firms (11 attorneys) not previously involved in the case to represent them. *Compare Burlington Drug Co. v. Merck & Co.*, 2:22-cv-00269, ECF 1 (E.D. Va. June 30, 2022) (joinder complaint) *and Zetia*, 2:18-md-02836, ECF 1642 (E.D. Va. Aug. 3, 2022) (joinder complaint) *with Zetia*, 2:18-md-02836, ECF 315 (E.D. Va. June 27, 2019) (class complaint).

members—including one that is an absent Class member here (Pharmacy Buying Association)—submitted affidavits stating that they would "likely not be able to pursue [their] claim" in a joinder action, one citing a risk of retaliation and both citing the burden and expense of litigating relatively small claims—and these two former class members in fact did not sue.[44] Eight of the 16 former *Zetia* class members that did not file joinder actions are also absent Class members here.[45] The former class members who filed joinder actions in *Zetia* after class certification was denied were served with extensive new discovery requests that generated numerous discovery disputes requiring repeated court intervention.[46]

---

[44] *Zetia*, 18-md-2836, ECFs 1358, 1360 (affidavits), 1363 (9/30/2021 hearing) (ordering depositions); JA5534 (Leitzinger Decl. Ex. 6) (Pharmacy Buying Association is a Class member here).

[45] *Compare Zetia*, 18-md-02836, ECF 1356-1 (list of putative class members), *with id.*, ECF 1583-1, ¶10 (nearly half the class did not sue), *and* JA5534 (Leitzinger Decl. Ex. 6) (of the absent class members who did not join in *Zetia*, Anda Inc, Capital Wholesale, Discount Drug Mart, DMS Pharmaceutical, Drugs Unlimited, Henry Schein, Morris & Dickson, Pharmacy Buying Association are Class members here too).

[46] Defendants and the joinder plaintiffs engaged in motion practice on defendants' extensive discovery requests. *Zetia*, 18-md-02836, ECFs 1653, 1663, 1665-69, 1680-81, 1686, 1693 at Tr. 127:23-174:2 (8/17/2022 Hearing). After the court ruled, defendants moved to set aside the ruling, resulting in additional motion practice. *Id.*, ECFs 1709, 1731, 1734. Defendants and the joinder plaintiffs also engaged in additional motion practice over which prior court orders and rulings would bind the joinder plaintiffs. *Id.*, ECFs 1627 at Tr. 10:5-12:13, 1657, 1627 (7/22/2022 Hearing), 1669, 1686, 1693 at Tr. 124:21-127:5 (8/17/2022 Hearing), 1696, 1701, 1730.

**Lamictal.** In *In re Lamictal Direct Purchaser Antitrust Litig.*, another reverse payment case,[47] direct purchaser plaintiffs originally sought to certify a class of 65 members,[48] 3 class representatives and 62 absent class members.[49] Ultimately, after several rounds of class certification briefing, the district court declined to certify a class of 32 class members, finding it did not satisfy Rule 23(a)(1).[50] Thereafter, only 18 former absent class members filed joinder complaints.[51] Thus, 44 former potential class members of the originally proposed class in *Lamictal*, and 11 members of the 32-member class for which class certification was ultimately denied under Rule 23(a)(1) did not sue. Eighteen of the 44 and 4 of the 11 former potential class members that did not sue are also absent

---

[47] *See generally King Drug Co. of Florence v. Smithkline Beecham Corp.*, 791 F.3d 388, 393 (3d Cir. 2015) (vacating dismissal).

[48] *See Lamictal*, 19-1655, Doc. 117 at A578 (3d Cir. Feb. 18, 2020) (list of class members).

[49] *See Lamictal*, 12-995, ECF 371 (D.N.J. May 20, 2022) (listing named plaintiffs).

[50] *Lamictal*, 12-995, ECF 553. The members of the 32-member class were the 32 purchasers of brand Lamictal (the initially proposed 62-member class also included entities that had purchased only generic Lamictal). *Id.*

[51] *Compare Lamictal*, 19-1655, Doc. 117 at A578 (3d Cir. Feb. 18, 2020) (original proposed class list), *with MLI Rx LLC v. GlaxoSmithKline*, 23-cv-429, ECF 1 (E.D. Pa. Feb. 2, 2023) (joinder complaint); *Morris & Dickson v. GlaxoSmithKline*, 23-cv-480, ECF 1 (E.D. Pa. Feb. 7, 2023) (joinder complaint); *FWK Holdings, LLC v. GlaxoSmithKline*, 23-cv-757, ECF 1 (E.D. Pa. Feb. 27, 2023) (joinder complaint). The *Lamictal* joinder plaintiffs filed in a new jurisdiction, creating a dispute over a motion to transfer. *E.g.*, *MLI*, 23-cv-429, ECFs 59-60 (granting motion to transfer).

Class members here.[52] In *Lamictal*, defendants requested extensive discovery of the joined plaintiffs, requests that resulted in disputes requiring court intervention and that have already delayed the schedule twice,[53] and fact discovery of the joined plaintiffs is not scheduled to close until approximately early 2025 at the soonest.[54]

**Value Drug.** In *Value Drug Co. v. Takeda Pharms., U.S.A., Inc.*, involving alleged impaired generic competition, the proposed class consisted of 49 members (1 class representative and 48 absent class members).[55] Of the 48 absent class members, only 15 filed suit after class certification was denied.[56] Thus, 33 former

---

[52] *Compare Lamictal*, 19-1655, Doc. 117 at A578 (3d Cir. Feb. 18, 2020) (initial proposed class list), *and Lamictal*, 12-995, ECF 543-2 (listing 32 class members under "Brand Purchasers"), *with MLI*, 23-cv-429, ECF 1 (joinder complaint); *Morris & Dickson*, 23-cv-480, ECF 1 (joinder complaint); *FWK Holdings*, 23-cv-757, ECF 1 (joinder complaint); *and* JA5534 (Leitzinger Decl. Ex. 6). Of the 44 original absent class members in *Lamictal* that did not join, 18 are absent Class members here: Anda Inc, Auburn Pharmaceutical, Bartell Drug, Bloodworth Wholesale, Capital Wholesale, Discount Drug Mart, DMS Pharmaceutical, Drugs Unlimited, Express Scripts, Genetco, Optum RX, Publix, Quest Pharmaceuticals, R & S Northeast, Richie Pharmacal, Thrifty White, Top Rx, and Wakefern.

[53] *See Lamictal*, 12-995, ECFs 592 (extending deadlines), 599 (extending deadline for fact discovery to 60 days after the court ruling on still-pending discovery disputes), 607 (discovery disputes briefed), & 10/4/2024 Order (setting 11/18/2024 hearing for discovery disputes).

[54] *See id*.

[55] *Value Drug Co. v. Takeda Pharms., U.S.A., Inc.*, 21-cv-03500, 2023 WL 2314911 (E.D. Pa. Feb. 28, 2023) (denying class certification under Rule 23(a)(1)).

[56] *Compare Value Drug*, 2:21-cv-03500, ECF 724-3 at p.408 of 879 *with* ECF 905, ¶1 (complaint adding joinder plaintiffs).

class members—two-thirds of the proposed class—did not sue at all; and 13 of the

33 former class members that did not sue in *Value Drug* are also Class members

here.[57] In *Value Drug*, 21 of the 27 class members with the smallest claims did not

sue,[58] eleven of which are absent class members here.[59] Numerous discovery

disputes concerning the joined plaintiffs required extensive filings and repeated

court intervention following filing of the joinder complaint.[60]

---

[57] *Compare Value Drug*, 2:21-cv-03500, ECF 724-3 at p.408 of 879 *with* ECF 905, ¶1 *and* JA5534 (Leitzinger Decl. Ex. 6). Of the 33 former class members that did not join in *Value Drug*, 13 are also Class members here: Auburn Pharmaceuticals, Capital Wholesale, Cesar Castillo Inc, Curascript, Express Scripts, Genetco, KPH Healthcare, Pharmacy Buying Association, R&S Northeast, Richie Pharmacal, Schnucks, Thrifty White, and Top Rx.

[58] *Compare Value Drug*, 2:21-cv-03500, ECF 724-3 at p.409 of 879 (listing class members' damages) *with* ECF 905, ¶1 (complaint adding joinder plaintiffs).

[59] *Compare Value Drug*, 2:21-cv-03500, ECF 724-3 at p.409 of 879 (listing class members' damages) *and* ECF 905, ¶1 (complaint adding joinder plaintiffs), *with* JA5534 (Leitzinger Decl. Ex. 6).

[60] *Value Drug*, 21-cv-03500, ECFs 915 (defendants' motion to compel), 916 (plaintiffs' opposition), 917 (recommendation on motion to compel), 919 (order regarding motion to compel), 918 (defendants' motion to compel), 920 (plaintiffs' opposition), 924 (recommendation on motion to compel), 927-28 (plaintiffs' objection to recommendation), 929 (defendants' opposition), 930 (order regarding motion to compel), 922 (plaintiffs' motion for protective order), 925 (defendants' opposition), 926 (recommendation on motion for protective order), 933 (order regarding motion for protective order), 940 (defendants' motion to compel), 942 (plaintiffs' opposition), 964 (recommendation on motion to compel), 967 (order on motion to compel), 944 (defendants' motion to compel), 948 (plaintiffs' opposition), 947 (scheduling conference on motions to compel), 965 (recommendation on motion to compel), 969 (order on motion to compel).

In total, there are at least 21 Class members here that were members of the proposed classes in *Modafinil*, *AndroGel, Zetia*, *Lamictal*, and/or *Value Drug* that did not file a joinder action or an individual action after class certification was denied in those matters because courts decided that plaintiffs had not shown that joinder of all class members was impracticable. The record of what happened in all these cases after class certification was denied, however, demonstrates that joinder of all Class members here *is* impracticable.[61]

## II. Procedural History

### A. Pleadings and Discovery

This litigation has been pending since November 9, 2011, when DPPs filed the first antitrust lawsuits challenging Pfizer's and Ranbaxy's conduct regarding the prescription drug, Lipitor.[62] The direct purchaser class actions were centralized

---

[61] *See supra*, notes 45, 52, and 57 (Anda, Auburn Pharmaceuticals, Bartell Drug, Bloodworth Wholesale, Capital Wholesale, Curascript, Discount Drug Mart, DMS Pharmaceutical, Drugs Unlimited, Express Scripts, Genetco, Henry Schein, Optum Rx, Pharmacy Buying Association, Quest Pharmaceuticals, R&S Northeast, Richie Pharmacal, Schnucks, Thrifty White, Top Rx, Wakefern—all members of the DPP Class here, were class members in at least one of the prior cases where class certification was denied and did not subsequently sue in any of these other similar actions). *See also* ECF 1222 (DPPs' Class Certification Br., 20-22); ECF 1257 (DPPs' Class Certification Reply Br., 14-15); ECF 1402 at Tr. 70-71.

[62] *See, e.g., Value Drug Co. v. Pfizer Inc.*, 3:11-cv-06872, ECF 1 (D.N.J.).

and transferred to the District Court of New Jersey, then consolidated with one another and coordinated with the end-payor and Retailer actions.[63]

In September 2013, the District Court (Sheridan, J.) granted Defendants' motions to dismiss. In August 2017, this Court reversed and reinstated Plaintiffs' claims. *Lipitor*, 868 F.3d 231. The case then proceeded to discovery.

In March 2020, just six days before substantial completion of fact discovery and the deadline for Defendants to make their privilege election, the District Court referred the case to mediation and stayed discovery over Plaintiffs' objections.[64] Plaintiffs repeatedly sought to lift the stay on discovery without success.[65] *See* Retailers' Brief at 19-21. In June 2022, the District Court opened discovery on a very narrow aspect of causation and on class certification.[66] With this limited discovery, the DPPs served expert reports on causation and class certification (including on damages based on assumptions regarding "but for" generic entry) in

---

[63] ECF 109.

[64] ECFs 617, 948, 958, 1305 (Orders staying discovery).

[65] *See, e.g.*, ECFs 946 (Plaintiffs' 3/11/20 letter opposing stay), 1017-2 at 35, 36, 39, 42, 44 (Plaintiffs' objections to stay stated at 11/13/20 Status Conference); 1070 at 7, 8, 14 (same at 12/7/21 Status Conference); 1066-1 at 1-4 (same in 1/7/22 Joint Report); 1073-1 at 1-2 (same in 1/18/22 filing).

[66] ECF 1085.

late 2022 and early 2023 pursuant to District Court orders (and over Plaintiffs' strenuous objection in light of the restrictions on discovery).[67]

### B. Summary Judgment

At Defendants' urging (over DPPs' objections), the District Court bifurcated discovery, allowing discovery to proceed only on the issues of the FDA approval of generic Lipitor and class certification, followed by briefing on summary judgment as to causation and then briefing on class certification.[68] This was prejudicial and reversible error, for the reasons set forth in the Retailers' Brief, Argument §IV, incorporated by reference.

On March 15, 2023, Defendants filed a motion for summary judgment on a very narrow issue related to causation: whether Ranbaxy would have obtained final FDA approval even one day earlier than November 30, 2011 (the date it actually received final approval) had Pfizer not paid it to delay the entry of generic Lipitor until November 30, 2011 but had agreed to an entry date one day earlier.[69] DPPs filed an opposition on May 1, 2023.[70] Defendants replied on May 22, 2023.[71] The

---

[67] ECF 1085 (June 2022 scheduling order re-opening limited discovery); ECFs 1086, 1091, 1114 & 1121 (Plaintiffs' appeals of the June 2022 scheduling order).

[68] ECF 1085 (setting schedule); ECF 1161 (same); *supra*, n.67 (Plaintiffs' objection to scheduling orders).

[69] ECF 1183.

[70] ECF 1217.

[71] ECF 1235.

District Court heard oral argument on the summary judgment motion on November 27, 2023.[72]

On June 6, 2024, the District Court granted Ranbaxy's motion for summary judgment (Pfizer by then had settled) on the limited causation issue on which it permitted discovery. The District Court held that there was a high likelihood that FDA's approval of Ranbaxy's ANDA on November 30, 2011, the exact same day that Pfizer paid Ranbaxy to accept in their June 2008 reverse payment agreement, was a mere "cosmic coincidence," finding that no jury could find that FDA would have approved Ranbaxy's ANDA even one day earlier had Pfizer and Ranbaxy agreed to an earlier entry date (such as November 29, 2011) without the alleged payment to Ranbaxy to delay its launch of generic Lipitor.[73] DPPs, together with other plaintiffs, have appealed this clearly erroneous ruling.[74]

### C. Class Certification and Settlement with Pfizer

On May 5, 2023, DPPs filed a motion to certify the DPP Class; Defendants opposed on June 5, 2023; and DPPs filed a reply on June 30, 2023.[75] The District Court heard oral argument on November 27, 2023.[76]

---

[72] ECF 1323; JA7516 (11/27/23 Hearing Tr.).

[73] ECF 1415.

[74] JA0001-20 (notices of appeals).

[75] ECFs 1221-23, 1241, 1257.

[76] ECF 1323; JA7582-625 (11/27/23 Hearing Tr.).

While the summary judgment and class certification motions were pending, DPPs settled with Pfizer. On March 8, 2024, the District Court granted DPPs' motion for preliminary approval of the Pfizer settlement and certified a class in connection with the settlement with a class definition virtually identical to the definition in DPPs' motion to certify the DPP Class.[77] The class that the same District Court (the same judge, Sheridan, J.) certified in connection with settlement consists of the same 63 direct purchasers as in the proposed Class the District Court rejected. Yet in connection with settlement, the District Court found that the 63-member class satisfied all requirements of 23(a) and 23(b)(3), including Rule 23(a)(1):

> Pursuant to Rule 23(a)(1), the Court determines that, in connection with and solely for purposes of settlement, the Class is so numerous and geographically dispersed that joinder of all members is impracticable. The Class has 63 members geographically dispersed throughout the United States, which is sufficient to satisfy the impracticality of joinder requirement of Rule 23(a)(1).

---

[77] *Compare* JA7627-28 (Order certifying settlement class) (definition of class certified for settlement, with a paragraph excluding Retailer Plaintiffs), *with* JA0118 (Op. at 2) (same definition but without a paragraph expressly excluding Retailer Plaintiffs). The number of class members is the same in both classes—63 in each. *Compare* JA7627-28 (Order certifying settlement class) (settlement class has 63 members) *with* ECF 1222, 1, 19 (seeking to certify same 63-member litigation Class). The DPPs excluded Retailer Plaintiffs from the count of Class members for the litigation class; hence it has the same 63 members as the settlement class. JA5504 (Leitzinger Decl. n.68).

JA7627-28 (Order certifying settlement class). On June 12, 2024, the District

Court granted final approval of the settlement with Pfizer and dismissed the DPPs'

claims against Pfizer. JA7637 (Order approving settlement).

## III. Rulings Presented for Review

The District Court's June 6, 2024 summary judgment ruling disposed

entirely of DPPs' claims—the District Court granted summary judgment to

Ranbaxy on causation, an element DPPs must prove "[i]n order to sustain a cause

of action" on their antitrust claims. JA0035 (Opinion Granting Summary

Judgment); JA0116 (Order granting summary judgment). DPPs have appealed that

ruling in 24-2202.

Later that same day, on June 6, 2024, after granting summary judgement to

Ranbaxy, the District Court denied DPPs' motion to certify the DPP Class in a 23-

page opinion, holding that the DPP Class could not be certified "[g]iven that the

Court [] previously ruled that DPPs cannot prove an essential element of their

action, causation." JA0139 (Op.). The District Court further stated that, "even if

the Court had not granted summary judgment on causation, class certification

would still be denied" because the proposed 63-member class did not meet Rule

23(a)(1)'s numerosity requirement. *Id*. The District Court's ruling denying DPPs'

motion for class certification is the subject of this appeal and brief.

# SUMMARY OF ARGUMENT

The District Court's denial of class certification was at least the District Court's *third* major clearly erroneous decision in favor of Defendants, coming after the District Court's erroneous grant of Defendants' motion to dismiss (reversed by this Court) and erroneous causation summary judgment ruling (on appeal). In denying class certification, the District Court committed multiple reversible errors; each, standing alone, justifies vacating and reversing the District Court's ruling.

The District Court erred by issuing an improper advisory opinion on class certification *after* granting summary judgment to Ranbaxy. Once summary judgment was granted, DPPs' class certification motion became moot, and therefore the District Court lacked authority and jurisdiction to issue what was an improper advisory opinion on class certification.

The District Court committed a second reversible error by failing to recognize that the 63-member Class presumptively satisfies Rule 23(a)(1) under the "relaxed burden" applicable to classes like this one with more than 40 members.[78]

Third, the District Court fundamentally erred in evaluating the two primary factors identified by this Court in determining whether Rule 23(a)(1) has been

---

[78] *See also* ECFs 1222 (DPPs' Class Certification Br., 18), 1257 (DPPs' Class Certification Reply, 13, n.25).

satisfied: "judicial economy" and "claimants' ability and motivation to litigate as joined plaintiffs". *See Modafinil*, 837 F.3d at 253.

The District Court erred in evaluating the "judicial economy" factor, misconstruing DPPs' evidence that judicial economy weighs strongly in favor of finding Rule 23(a)(1) satisfied. The District Court waived away DPPs' evidence that denial of class certification in similar cases resulted in expensive, time-consuming, and entirely avoidable motion practice that unnecessarily burdened the courts (*supra*, Relevant Facts §I.D), stating that "DPPs draw no connections between the present case and *Value Drug* or *In re Zetia* other than the procedural posture of the cases." JA0129 (Op.). This is not correct. The connections between this case and the others (*Modafinil*, *AndroGel*, *Zetia*, *Lamictal*, and *Value Drug*) are obvious—those cases, like this case, are antitrust actions brought by pharmaceutical direct purchasers challenging unlawful "reverse payment agreements" under *FTC v. Actavis, Inc.*, 570 U.S. 136 (2013) or impaired generic competition, and all involve similar classes of pharmaceutical direct purchasers that include many of the very same Class members as here. *Supra*, Relevant Facts §I.D. Evidence of the waste of judicial resources and extensive delays resulting from joinder actions in similar cases *is* evidence of the judicial economy gained by certifying this Class as compared to litigating as a joinder action from the start of the litigation. The District Court improperly ignored "the administrative burden

that multiple or aggregate claims place upon the courts" (*see Modafinil*, 837 F.3d at 254) and so its analysis of "judicial economy" was clearly erroneous. Class certification is the "substantially more efficient mechanism" as compared to joinder, and so judicial economy supports certification. *See id.* at 257.

The District Court also erred in evaluating the "claimants' ability and motivation to litigate as joined plaintiffs" factor. The District Court disregarded evidence of what has happened in similar direct purchaser class actions involving many of the Class members here when courts have denied class certification on the basis that impracticability of joinder had not been established.[79] This evidence shows that Rule 23(a)(1)—which requires that "the class is so numerous that joinder of <u>*all*</u> members is impracticable" (emphasis added)—is unquestionably met here. In similar cases involving similar allegations and similarly-comprised classes, many class members did <u>not</u> file joinder actions following the denial of class certification, demonstrating that they lack sufficient "ability and motivation" to file a joinder action, including because they fear retaliation from defendants (their suppliers), a fear memorialized in an affidavit submitted by one of the Class members here in connection with the *Zetia* case, and also established by class

---

[79] *See also* ECFs 1222 (DPPs' Class Certification Br., 20-22), 1257 (DPPs' Class Certification Reply Br., 14-15), 1402 at Tr. 70-71 (impracticality of joinder evidence).

member declarations and testimony in *Modafinil*. *Supra*, Relevant Facts §I.D. Twenty-one Class members here that were members of previous classes where certification was denied never sued afterwards and therefore never had their claims adjudicated in court. *Id.* This evidence shows that many Class members here—based on overwhelming evidence of past conduct in indistinguishable circumstances—*lack* the "ability and motivation to litigate as joined plaintiffs." The District Court erred in failing to credit, or even address, this evidence.

The District Court also failed to properly consider DPPs' evidence that many Class members have "negative value claims" (JA0133-35) that are so small—six under $10,000 even after assumed trebling—that they are not worth litigating either individually *or via joinder*. *See supra*, Relevant Facts §I.C-D. As *Modafinil* recognized, "ensuring that small-value claims have a mechanism by which they can be economically litigated" is "one of the purposes behind Rule 23(a)(1) and class actions in general[.]" 837 F.3d at 253 (citations omitted). DPPs' evidence shows that class certification is necessary here to achieve that purpose.

This was reversible error, as DPPs have shown that joinder of "all" Class members is not practicable here with evidence that it was not practicable in any of the similar cases involving many of the same absent Class members. The fact that "some" or even "most" Class members, or those "Class members with the largest claims," may file suit after denial of class certification does not address the

question presented by Rule 23(a)(1), which is whether joinder of *all* Class members is "impracticable," not impossible. *Modafinil*, 837 F.3d at 249 ("Impracticable does not mean impossible.").

The District Court's misapplication of the *Modafinil* factors also includes giving too little weight to the significant geographic dispersion of the Class.

Reversal of the District Court's clearly erroneous application of the *Modafinil* factors is appropriate and necessary because the denial of class certification in similar direct purchaser cases has led repeatedly to many class members *not* joining in a subsequent joinder action, demonstrating with "facts on the grounds" that "joinder of all class members is impracticable", leaving their injuries entirely unredressed, and allowing defendants to escape liability for those same injuries. This undermines the important role of private enforcement of federal antitrust law. As the Supreme Court has recognized: "Rule 23 of the Federal Rules of Civil Procedure provides for class actions that may enhance the efficacy of private actions [enforcing antitrust laws] by permitting citizens to combine their limited resources to achieve a more powerful litigation posture." *Hawaii v. Standard Oil Co.*, 405 U.S. 251 (1972). *See also Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979) ("Congress created the treble-damages remedy . . . precisely for the purpose of encouraging private challenges to antitrust violations. These private suits provide a significant supplement to the limited resources available to

the Department of Justice for enforcing the antitrust laws and deterring violations.") (emphasis in original).

Finally, not only was the District Court's class certification ruling an abuse of discretion resting on numerous errors, but it is also irreconcilable with its own prior ruling certifying the same 63-member class in connection with the Pfizer settlement. Settlement classes must meet all requirements of Rule 23(a) and (b)(3), except for manageability under 23(b)(3)(D). *Amchem Prod.*, *Inc. v. Windsor*, 521 U.S. 591, 620 (1997). *See also In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 308 (3d Cir. 1998) ("a district court must first find a class satisfies the requirements of Rule 23, regardless [of] whether it certifies the class for trial or for settlement") (citations omitted). The District Court found, in certifying a class in connection with settlement, that the "Class is so numerous and geographically dispersed that joinder of all members is impracticable[.]" JA7627-28, ¶4 (Order certifying settlement class). The District Court's June 6, 2024 finding to the contrary in connection with the very same class is yet another example of the District Court misapplying the law to rule in favor of Defendants in this case.

## STANDARD OF REVIEW

Generally, an order denying class certification is reviewed "for abuse of discretion, which occurs if [the] [D]istrict [C]ourt's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of

law to fact." *In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 190 (3d Cir. 2020) (internal quotations and citations omitted). *See also Gates v. Rohm & Haas Co.*, 655 F.3d 255, 258 (3d Cir. 2011).

However, as set forth *infra* in Argument, §I, the District Court lacked jurisdiction to issue its improper advisory class certification opinion, an issue for which this Court must apply *de novo* review. *Clark v. Governor of New Jersey*, 53 F.4th 769, 776 (3d Cir. 2022) ("[W]e review whether this case is moot de novo."). *See also Wujick v. Dale & Dale, Inc.*, 43 F.3d 790, 792 (3d Cir. 1994) ("[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review.") (quotation omitted).

## ARGUMENT

### I.    The District Court Erred by Issuing an Improper Advisory Opinion

Regardless of how this Court rules on the summary judgment appeal, the District Court's class certification ruling should be vacated. The District Court's class certification ruling was issued *after* DPPs' claims were fully extinguished by the District Court's grant of summary judgment as to "an essential element of [DPPs'] action: causation[.]" JA0119, JA0130, JA0139 (Op.); JA0116 (Order granting summary judgment); JA0140 (Order denying class certification). This means that DPPs' class certification motion was moot, and that the District Court

had no authority or jurisdiction to issue an improper advisory opinion on class certification.

"The case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). "A federal court is without power to decide moot questions or to give advisory opinions which cannot affect the rights of the litigants in the case before it." *Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Emp. of Am., Div. 998 v. Wisconsin Emp't Relations Bd.*, 340 U.S. 416, 418 (1951) (quotation and citations omitted). "Mootness is a jurisdictional question because the Court is not empowered to decide moot questions or abstract propositions[.]" *N. Carolina v. Rice*, 404 U.S. 244, 246 (1971) (quotations and citations omitted). *See also, e.g.*, *People of State of Cal. v. San Pablo & T.R. Co.*, 149 U.S. 308, 314 (1893) ("the court is not empowered to decide moot questions…").

In contravention of this settled law, the District Court issued a 23-page advisory opinion on a moot class certification motion:

> Given that the Court has previously ruled that DPPs cannot prove an essential element of their action, causation, this motion is denied. (*See* ECF 1415).

> However, even if the Court had not granted summary judgment on causation, class certification ***would still be denied***. This is because, after its analysis of the impracticability factors set forth by the *Modafinil* court, the Court finds that DPPs have failed to prove by the preponderance of the evidence that joinder is impracticable under Rule 23(a)(l).

JA0139 (Op.) (emphasis added). This was reversible error. As courts—including

this same District Court—have repeatedly found, a class certification motion is

mooted by the grant of summary judgment to defendants. *E.g.*, *Smith v. Johnson &*

*Johnson*, 593 F.3d 280, 283 (3d Cir. 2010) (noting that, "[i]n view of the [District]

Court's substantive ruling [granting summary judgment], [the plaintiff's] motion

for class action certification became moot and the [District] Court denied it.");

*Bencosme v. Stillman Law Office, LLC*, 18-cv-03304, 2020 WL 1955826, at *1

(D.N.J. Apr. 23, 2020) (Sheridan, J.) ("For the reasons stated below, Defendant's

motion for summary judgment motion is granted, and [] class certification is

denied as moot.").[80]

---

[80] *See also In re KBR, Inc.*, 893 F.3d 241, 264 (4th Cir. 2018) ("the 'customary practice . . . is to vacate the moot aspects of the lower court's judgment'") (citation omitted); *Corbin v. Time Warner Ent.-Advance/Newhouse P'ship*, 821 F.3d 1069, 1084 (9th Cir. 2016) (district court's summary judgment ruling "fully moots" the issue of class certification because, "[i]f it is found, prior to class certification, that the named plaintiffs' individual claims are without merit, then dismissal is proper") (citation omitted); *Saeger v. Pac. Life Ins. Co.*, 305 F. App'x 492, 493 (9th Cir. 2008) (affirming district court denial of class certification motion as moot following an order granting summary judgment to defendants); *Saroza v. Lyons, Doughty & Veldhuis, P.C.*, 17-cv-00523, 2021 WL 2549273, at *4 (D.N.J. June 22, 2021) ("[A]djudication of the summary judgment motions renders the class certification issue moot."); *Broking v. Green Brook Buick GMG Suzuki*, 15-cv-01847, 2017 WL 3610490, at *8 (D.N.J. Aug. 22, 2017) (granting defendant's motion for summary judgment and stating: "As there was no violation of the [underlying Act], Plaintiff's Motion for Class Certification . . . is DENIED AS MOOT"); *Hamilton v. LLM Mgmt., Inc.*, 13-cv-02932, 2016 WL 589869, at *1 n.1 (E.D. Pa. Feb. 11, 2016) ("Because I am granting the defendants' motions for summary judgment, I will deny the plaintiff's pending motion for class certification as moot."); *Wass v. Dolgencorp, LLC*, 13-cv-03267, 2014 WL

This Court must review whether the District Court lacked jurisdiction to issue its improper advisory class certification opinion *de novo*. *Supra*, Standard of Review.

The District Court's improper, advisory class certification opinion must be vacated.[81]

---

5307505, at *2 (W.D. Mo. Oct. 16, 2014) ("where a motion for summary judgment against plaintiff is granted in full, a pending motion for conditional class certification becomes moot.") (citing *Smith*, 593 F.3d at 283); *Baer v. Harmon L. Offs., P.C.*, 08-cv-30063, 2009 WL 102698, at *2 (D. Mass. Jan. 14, 2009) (denying class certification as moot where court granted summary judgment in favor of defendant); *Broessel v. Triad Guar. Ins. Corp.*, 04-cv-0004, 2007 WL 2155691, at *3 (W.D. Ky. July 25, 2007) (same).

[81] Insofar as the District Court ruled that a plaintiff must prove causation on the merits as part of class certification, that ruling, too, would be erroneous. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 470 (2013) (class-wide merits defense that could doom the claims of *all* class members does not bar certification, because it presents a fatal similarity, not a fatal dissimilarity); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 457 (2016) ("When, as here, the concern about the proposed class is not that it exhibits some fatal dissimilarity but, rather, a fatal similarity—[an alleged] failure of proof as to an element of the plaintiffs' cause of action—courts should engage that question as a matter of summary judgment, not class certification.") (quotation and citation omitted); *Modafinil*, 837 F.3d at 266 n.34 (Argument regarding the cause of injury "is inappropriate at the class certification stage. It has nothing to do with whether common questions of law and fact predominate, and instead goes to the issue of liability.").

## II. The District Court Erred By Ignoring That the 63-Member Class Here Presumptively Satisfies Rule 23(a)(1) and Faces a "Relaxed Burden" Under Rule 23(a)(1)

The District Court erred by disregarding that the proposed Class exceeds 40 when assessing whether Rule 23(a)(1) is met.[82]

The evidence shows, and the District Court correctly recognized, that there are **63** Class members, each of which purchased Lipitor directly from Pfizer and/or generic Lipitor directly from Ranbaxy.[83] The District Court properly rejected Ranbaxy's arguments that "consolidated corporate entities" or "merged" entities do not count (JA0126 (Op.)). The District Court's finding on the class size was correct because each of the 63 direct purchaser entities is a separate legal entity and therefore counts as a separate Class member for purposes of Rule 23(a)(1), as courts have unanimously recognized in similar cases.[84]

---

[82] *See* ECF 1222 (DPPs' Class Certification Br., 18); ECF 1257 (DPPs' Class Certification Reply Br., n.25).

[83] *Supra*, Relevant Facts §I.C. DPPs excluded Retailer Plaintiffs from the count of 63 members even though they were not required to do so, meaning that 63 is, if anything, an undercount of Class members. JA5504 (Leitzinger Decl., ¶36, n.68); *In re HIV Antitrust Litig.*, 19-cv-02573, 2022 WL 22609107, at *42 (N.D. Cal. Sept. 27, 2022) (counting retailer plaintiffs who filed individual actions as separate class members for purposes of Rule 23(a)(1) because, although they "may well opt out, it is impossible to say for sure at this juncture.") (collecting cases).

[84] *In re Niaspan Antitrust Litig.*, 397 F. Supp. 3d 668, 677-79 (E.D. Pa. 2019) (subsidiaries count as separate class members); *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 207 (S.D.N.Y. 2018) (subsidiaries count as separate class members under Rule 23(a)(1)); *Am. Sales Co., LLC v. Pfizer, Inc.*, 14-cv-00361, 2017 WL 3669604, at *8 (E.D. Va. July 28, 2017) (same); *In re*

That the Class includes more than 40 members is significant. Although Rule 23(a)(1) does not include a "floor" under which classes are too small to be certified, this Court has repeatedly ruled that "'generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.'" *Modafinil*, 837 F.3d at 249-50 (quoting *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)). *See also* JA0126 (Op.) (citing *Modafinil*); *Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 896 (3d Cir. 2022) ("We presume joinder is impracticable when the potential number of class members exceeds forty."); *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 486 (3d Cir. 2018) ("a plaintiff in this circuit can generally satisfy Rule 23(a)(1)'s numerosity requirement by establishing 'that the potential number of plaintiffs exceeds 40.'") (quoting *Stewart*, 275 F.3d, at 226-27).[85]

In *Allen*, this Court reiterated that proposed classes of more than 40 members—like the 63-member Class here—"face[] a relaxed burden under [Third

---

*Solodyn Antitrust Litig.*, 14-md-02503, 2017 WL 4621777, at *4 (D. Mass. Oct. 16, 2017) (same); *In re Loestrin 24 Fe Antitrust Litig.*, 13-md-02472, 2019 WL 3214257, at *10 (D.R.I. July 2, 2019) (same).

[85] The same presumption applies in other Circuits. *E.g.*, 1 Newberg and Rubenstein on Class Actions §3.12 (6th ed. 2022) ("As a general guideline . . . a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone.") (collecting cases); *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members."); *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (similar).

Circuit] precedent" and only for classes with fewer than forty members should the "inquiry into impracticability [] be particularly rigorous." 37 F.4th at 896. This is consistent with *Modafinil*'s holding that courts' Rule 23(a)(1) analysis should be "particularly rigorous when the putative class consists of *fewer* than forty members." *Modafinil*, 837 F.3d at 250 (emphasis added); *see also id.* (quoting 5 James Wm. Moore, et al., *Moore's Federal Practice* §23.22 ("[a] class of 41 or more is usually sufficiently numerous . . . [while] [c]lasses with between 21 and 40 members are given varying treatment. These midsized classes may or may not meet the numerosity requirement depending on the circumstances of each particular case.")).

Consistent with this law, courts have held that proposed classes above 40 satisfy Rule 23(a)(1), without engaging in a detailed assessment of the *Modafinil* factors, including in *Suboxone*, where the district court found numerosity satisfied for a similar class of direct pharmaceutical purchasers because "the proposed class is larger than forty, as it includes seventy-one members identified by [defendant's] sales data as direct purchasers." *In re Suboxone Antitrust Litig.*, 421 F. Supp. 3d 12, 47 (E.D. Pa. 2019), *aff'd*, 967 F.3d 264 (3d Cir. 2020).[86]

---

[86] *See also, e.g.*, *Carr v. Flowers Foods, Inc.*, 15-cv-06391, 2019 WL 2027299, at *9 (E.D. Pa. May 7, 2019) (classes with 64 and 83 members satisfied numerosity based on the number of class members alone; a 28-member class satisfied numerosity *after* analysis of the additional *Modafinil* factors).

Having properly certified the same 63-member class in conjunction with the DPPs' settlement with Pfizer, by finding, among other things, that Rule 23(a)(1) was satisfied (JA7627-28, ¶4 (Order certifying settlement class)), the District Court erred by failing to recognize that the 63-member Class here presumptively satisfies Rule 23(a)(1), and therefore the District Court was *required* under controlling Third Circuit precedent to apply a "relaxed burden" to DPPs' argument and evidence that the numerosity requirement is satisfied. JA0126-38 (Op.). This failure to apply controlling law is reversible error.

## III. The District Court Erred in Applying the *Modafinil* Factors

In *Modafinil*, this Court provided a "non-exhaustive list" of factors "for district court judges to consider when determining whether joinder would be impracticable": "judicial economy, the claimants' ability and motivation to litigate as joined plaintiffs, the financial resources of class members, the geographic dispersion of class members, the ability to identify future claimants, and whether the claims are for injunctive relief or for damages"—emphasizing that "both judicial economy and the ability to litigate as joined parties are of primary importance." *Modafinil*, 837 F.3d at 252-53 (citation omitted). The District Court committed reversible error in finding that "judicial economy" and "claimants' ability and motivation to litigate as joined plaintiffs" do not support finding Rule 23(a)(1) met here. The District Court also erred by giving little weight to the

undisputed geographic dispersion of Class members. The District Court's evaluation of these factors would have been error even if this Class included fewer than 40 members but was particularly erroneous given that the District Court's failure to recognize that the 63-member Class here is above the 40-member presumptive threshold and so faces a "relaxed burden" to show that Rule 23(a)(1) is met. *Supra*, Argument §III.[87]

## A. The District Court Erred in Finding That "Judicial Economy" Does Not Support Finding Rule 23(a)(1) Met

*Modafinil* identified judicial economy as one of two "primary factor[s]" in assessing whether joinder is impracticable (the other being the "ability and motivation of Plaintiffs to pursue their litigation via joinder"). 837 F.3d at 253, 257. Judicial economy "looks to the administrative burden that multiple or aggregate claims place upon the courts." *Id.* (citing *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d Cir. 2012), for the proposition that the numerosity requirement "also promotes judicial economy by sparing the courts the burden of having to decide numerous, sufficiently similar individual actions seriatim"). Courts should "determine whether a class action would have been a substantially more efficient mechanism of litigating this suit than joinder of all parties," which

---

[87] The District Court held that DPPs' "ability to identify future claimants" factor "weighs neutrally" in the Rule 23(a)(1) analysis. JA0138 (Op.). This factor either weighs neutrally or supports class certification since the Class is "ascertainable." *See generally In re Niaspan Antitrust Litig.*, 67 F.4th 118, 129-30 (3d Cir. 2023).

"primarily involves considerations of docket control, taking into account practicalities as simple as that of every attorney making an appearance on the record." *Id.* at 257.

The District Court abused its discretion in finding that DPPs have not "shown that judicial economy is best served by a class action." JA0128 (Op.). First, the District Court erred in finding that Rule 23(a) imposes a "high standard when analyzing judicial economy as a factor[.]" *Id.* (quoting *Value Drug*, 2023 WL 2314911, at *9). Again, this Court has held that classes like this one with more than 40 members "generally satisfy Rule 23(a)(1)" and face a "relaxed burden"— not the "high standard" erroneously imposed by the District Court. *Supra*, Argument §III. Second, the District Court's "judicial economy" analysis—even if it had been applied to a class with under 40 members—was an abuse of discretion and reversible error.

DPPs' evidence shows that in five cases involving substantially similar antitrust claims and substantially similar classes (indeed, with many of the same pharmaceutical drug purchasers that are Class members here), the denial of class certification on the basis of numerosity led to the filing of multiple complaints, sometimes with new or additional counsel and in different jurisdictions than the putative class action and followed by briefing and argument surrounding motions

to transfer, and myriad discovery disputes and related motion practice, all of which consumed significant judicial resources. *Supra*, Relevant Facts §I.D.[88]

The District Court noted that the "impracticability analysis 'does not permit consideration of . . . the need to conduct further discovery if the class is not certified." JA0128 (Op.) (quoting *Modafinil*, 837 F.3d at 256). But DPPs' evidence shows that joinder—*whether the case proceeds by joinder from the outset or as a joinder action following denial of class certification*—harms judicial economy and imposes additional burdens on the court as compared to class certification.

While *Modafinil* suggested that the denial of class certification "does not mean that the litigation would have to begin anew for the unnamed class members . . . the District Court could, in its discretion, limit discovery" (837 F.3d at 256), DPPs' evidence shows that district courts have, in fact, been burdened in joinder actions in similar cases with extensive motion practice stemming from defendants' attempts to seek extremely broad discovery from the joinder plaintiffs. *Supra*,

---

[88] The District Court erroneously stated that "DPPs draw no connections between the present case and *Value Drug* or *In re Zetia* other than the procedural posture of the cases." JA0129 (Op.). The prior cases—not only *Value Drug* and *Zetia*, but also *Modafinil*, *AndroGel*, and *Lamictal*—were, like this case, brought by pharmaceutical direct purchasers challenging unlawful "reverse payment agreements" under *Actavis*, 570 U.S. 136 or similar impaired generic competition, and involve many of the very same issues and class members as this case. *See supra*, Relevant Facts §I.D; ECF 1222 (DPPs' Class Certification Br., 20-22) (summarizing evidence from similar cases); JA7585-86 (11/27/23 Class Hearing Tr.) (discussing evidence from similar cases).

Relevant Facts §I.D. In *Modafinil*, this Court stated that, in evaluating judicial economy, a district court could use its experience with the case up through adjudication of class certification to evaluate what *would have happened* had the case begun as a joinder action. 837 F.3d at 257. Similarly, courts can use what happened in similar cases with similar classes to make the same evaluation.

The extensive evidence outlined herein clearly demonstrates, by a preponderance of the evidence, that judicial economy would best be served by class certification. As recognized in *Niaspan*, 397 F. Supp. 3d 668, "the sheer size of the forty-eight member DPP putative class raises a presumption of impracticable joinder and poses a far greater challenge to judicial economy if the case were to proceed through joinder." *Id.* at 679. The same is true of the even-larger 63-member DPP Class here. The District Court's finding to the contrary based on the false premise that it could ignore the extensive evidence from other joinder actions in similar cases was an abuse of discretion, particularly given that the District Court disregarded that the Class here includes more than 40 members.

**B.    The District Court Erred in Finding That "Claimants' Ability and Motivation to Litigate as Joined Plaintiffs" Does Not Support Finding Rule 23(a)(1) Met**

As this Court explained in *Modafinil*, the purpose of the second primary factor, the "claimants' ability and motivation to litigate as joined plaintiffs," "is to further the broader class action goal of providing those with small claims

reasonable access to a judicial forum for the resolution of those claims." *Modafinil*, 837 F.3d at 257. *See also* JA0131 (Op.). As *Modafinil* further explained:

> This primarily involves an examination of the stakes at issue for the individual claims and the complexity of the litigation, which will typically correlate with the costs of pursuing these claims. Though joinder is certainly more economical for most plaintiffs than pursuing the case alone, it is often still uneconomical for an individual with a negative value claim to join a lawsuit. After all, each plaintiff may need to hire his own counsel to protect his individual interests—although total litigation costs would still likely be lower due to joint litigation agreements. Similarly, each plaintiff would be subject to discovery, whereas the defendants would have to show a greater need for discovery from unnamed plaintiffs in a class action.

837 F.3d at 257 (footnotes and citations omitted).

The District Court's clearly erroneous finding that this factor does not support class certification rests on several errors. JA0131-36 (Op.). As an initial matter, the District Court incorrectly stated that "the only evidence DPPs present is the projected size of each purchaser's claim" and that while "DPPs have shown that 'it may be uneconomical for these claims to be pursued in individual litigation'" they "have not shown 'that it would be uneconomical for these . . . class members to individually join[] as parties in a traditional lawsuit.'" JA0134 (Op.) (quoting *Modafinil*, 837 F.3d at 258). This mischaracterizes the evidence and arguments DPPs presented below and constitutes reversible error.

First, DPPs presented very strong evidence that the "class action goal of providing those with small claims reasonable access to a judicial forum for the

resolution of those claims" (*Modafinil*, 837 F.3d at 257) would be furthered by class certification—DPPs' evidence from similar cases involving many of the very same class members as this case shows that many Class members lack the ability and motivation to join as plaintiffs here. *Supra*, Relevant Facts §I.D; ECF 1222 (DPPs' Class Certification Br., 20-22). In short, real-world evidence from five similar direct purchaser cases that have proceeded as a joinder action following denial of class certification based on numerosity shows that joinder of all Class members is *not* practicable. In these similar cases, many former absent class members did not sue—not individually and not in a joinder action. *Id.* That is, they demonstrably lacked the "ability and motivation to litigate as joined plaintiffs."

In *Zetia*, half (16) of the 32 former putative, absent class members failed to pursue their claims via joinder, including 8 of the absent class members in this action. *Supra*, Relevant Facts §I.D. Two former absent class members in *Zetia*—including one that is an absent Class member here (Pharmacy Buying Association)—submitted affidavits stating that they would "likely not be able to pursue [their] claim" in a joinder action, both citing the burden and expense of litigating relatively small claims and one also citing a risk of retaliation—and these two former class members in fact did not sue. *Id.* In *Lamictal*, more than two-thirds (44) of the 65 members of the originally proposed class failed to file joinder actions, including 18 Class members in this action; 11 members of the 32-member

class for which class certification was ultimately denied under Rule 23(a)(1) did

not sue. *Id.* In *Value Drug*, more than two-thirds of the proposed class did not

participate in the joinder action, including 21 of the 27 with the smallest damages

and 13 Class members in this action. *Id.*[89]

In total, 21 putative *Lipitor* Class members that were absent putative class

members in *Modafinil*, *AndroGel, Zetia*, *Lamictal*, and/or *Value Drug* declined to

file joinder actions following denial of class certification (*id.*)—powerful evidence

that at least 21 Class members here (a full third of the Class) lack the "ability and

motivation to litigate as joined plaintiffs."

Second, the District Court incorrectly found that DPPs' evidence of Class

members' small, "negative value claims" was relevant only to whether Class

members would sue individually (and not relevant to whether they would sue via

joinder). JA0132-34 (Op.). DPPs' evidence shows that a number of members of the

Class have damages so low (even after assumed trebling) that they are not only

lower than the cost of litigating individually, but also fall below transaction and

other costs of litigating via joinder. As the District Court acknowledged, eight

Class members have treble damages under $70,000 apiece and 25 under $1

million. JA0133-34 (Op.); Relevant Facts §I.C. Six Class members have treble

---

[89] Similar information for the class members' claim values is not publicly
available for the other similar prior cases.

damages under $10,000 apiece. Relevant Facts §I.C. It is not credible to claim that a Class member with such a small claim could litigate this case via joinder. Although proceeding by joinder would be less expensive than suing individually, antitrust cases such as this one are extremely expensive to litigate. In this case, DPPs costs have already exceeded $34 million in attorney time and $2 million in out-of-pocket expenses,[90] and full fact discovery is not even complete and trial is not yet scheduled. These expenses are significant whether borne by the Class or divided among the 63 Class members. Even if all 63 Class members filed joinder actions, the $2 million in costs to date divided by 63 is more than $30,000, meaning at least six Class members already have "negative value" claims even setting aside the substantial attorneys' fees.

Third, the District Court failed to recognize that fear of retaliation is likely to motivate at least some Class members to <u>not</u> sue their supplier, Ranbaxy. As the Supreme Court has recognized, direct purchasers may decline to sue given their legitimate concerns of retaliation from supplier with whom they conduct regular business.[91] These fears are not merely hypothetical—multiple drug wholesalers

---

[90] ECF 1397-2, 35.

[91] *Ill. Brick Co. v. Ill.*, 431 U.S. 720, 746 (1977) ("direct purchasers sometimes may refrain from bringing a treble-damages suit for fear of disrupting relations with their suppliers").

have been terminated by their suppliers after filing suit.[92] Courts have recognized

that fear of retaliation is a valid consideration in assessing whether Rule 23(a)(1) is

met. *In re Lidoderm Antitrust Litig.*, 14-md-02521, 2017 WL 679367, at *14 (N.D.

Cal. Feb. 21, 2017) ("smaller [direct purchasers] also may not have the market-

power security to challenge defendants [in a joinder action] when they need to

negotiate to purchase drugs from these same entities in the future.").[93]

    In *Modafinil*, some absent class members submitted affidavits and testified

that they would not sue on their own due to a risk of retaliation. In *Zetia*, the

putative class member that submitted an affidavit stating it would "likely not be

able to pursue [their] claim" in a joinder action because of, *inter alia*, risk of

retaliation, in fact did not sue—and this same purchaser is a Class member here.

*See supra*, Relevant Facts §I.C.[94] The fear of retaliation—coupled with the high

costs of litigating via joinder relative to the size of many Class members' claims—

---

[92] *See, e.g.*, *Bergen Drug Co. v. Parke, Davis & Co.*, 307 F.2d 725 (3d Cir. 1962) (drug wholesaler terminated after filing antitrust litigation against its drug company supplier); *Rochester Drug Co-Operative, Inc. v. Braintree Lab'ys*, 796 F. Supp. 2d 560, 563-64 (D. Del. 2011) (supplier cut off three small wholesalers who had sued for antitrust violations).

[93] *See also Loestrin*, 2019 WL 3214257, at *10 (class members lack "incentives to bring suit individually against their supplier(s)"); 5 Moore's Fed. Prac. – Civ. (Matthew Bender 3d ed.) §23.22 (noting that "courts will be more likely to find impracticability of joinder if fear or retaliation or prejudice could deter individual class members from bringing suit").

[94] *See* ECF 1222 (DPPs' Class Certification Br., 21-23) (addressing fear of retaliation).

supports a finding that joinder of all class members is impracticable. Fear of retaliation is not mentioned in the District Court's class certification opinion.

Fourth, the District Court's "merger" analysis (JA0136 (Op.)) was erroneous and irrelevant to whether joinder of all Class members is practicable, and whether all will be able and motivated to sue. It does not matter that the "merged" entities the District Court emphasizes may be related to other Class members, because it does not change the fact that many other Class members lack the ability and motivation to litigate as joined plaintiffs. For example, none of the Class members identified as being a "merged" Class member (*id.* at n.6) has a claim worth less than $10,000. Hence, any joinder among the identified "merged" entities does not cure the other reversible errors in the District Court's analysis discussed above. Indeed, the defendants in *Value Drug* also pointed to "consolidated entities" within the proposed class (2023 WL 2314911, at *8), and, regardless of any purported consolidation, as discussed above, in *Value Drug*, more than two-thirds of the proposed class did not participate in the joinder action, including 21 of the 26 with the smallest damages and 13 Class members in this action. *See* Relevant Facts §I.D.

Fifth, the District Court's emphasis on three Class members with large shares of total damages (JA0135 (Op.)) does not defeat class certification. Courts routinely certify classes that include the same three class members, and this Court

affirmed certification of such a class in *Suboxone*, 421 F. Supp. 3d 12, *aff'd*, 967 F.3d 264.[95] The existence of three large Class members means that most Class members have small claims. As one court explained in certifying a similar pharmaceutical direct purchaser class with more than 40 members, that three class members "account for 86% of the purchases only heightens the conclusion as to impracticality of joinder given the smaller-size of the other DPPs' claims." *Lidoderm*, 2017 WL 679367, at \*14. That is the case here—many Class members have very small claims (*see supra*, Relevant Facts §I.C), which "heightens the conclusion as to impracticability of joinder."

Sixth, the District Court erroneously faulted DPPs for failing to submit affidavits from absent Class members stating that joinder would be impracticable. JA0131 (Op.) ("While the Court agrees that the DPPs need not present affidavits and declarations explaining why joinder would be impracticable by individual class members, such evidence would be helpful; the Court needs a basis on which to decide that joinder is too expensive, time involved, and logistically unfeasible."). But no such affidavits are required for class certification. As the Supreme Court has held, "an absent class-action plaintiff is not required to do

---

[95] *See also In re Suboxone Antitrust Litig.*, 2:13-md-2445, ECF 993 (E.D. Pa.) (the three largest class members, the "National Wholesalers," collectively represent approximately 93% of the direct purchases).

anything. He may sit back and allow the litigation to run its course[.]" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985). Moreover, as noted in Relevant Facts §I.D, absent class members submitted affidavits and then testified in *Modafinil* and *Zetia* that they would not litigate via joinder.

### C. The District Court Erred in Giving Little Weight to the Fact That the Class Here is Geographically Dispersed

The District Court recognized that "DPPs have shown that the prospective class members are dispersed across the United States and have a large presence in Puerto Rico." JA0137 (Op.) (citation omitted). The 63 Class members are dispersed across the country, in Puerto Rico and in 27 states, including as far away as California and Washington State.[96] However, the District Court abused its discretion in holding that this significant geographic dispersion only "weighs slightly in favor of class certification." JA0137 (Op.). The District Court emphasized the "technological advancements after the COVID-19 pandemic" (*id.*) but these advances do not change the need for joinder plaintiffs to travel to appear in person—as they are required to do for settlement conferences and the final pretrial conference absent permission from the Magistrate Judge in this action to

---

[96] JA5535 (Leitzinger Decl. Ex. 7) (showing Class members' geographic dispersion).

participate by telephone.[97] It is also the practice of the current District Court to routinely hold in-person hearings.[98] And trials are conducted in person.

\* \* \*

The District Court committed numerous reversible errors in ruling that DPPs failed to prove by a preponderance of the evidence that joinder is impracticable under the "relaxed burden" applicable to classes—like the Class here—with more than 40 members, and given the substantial evidence of the impracticability of joining all Class members provided by DPPs, which includes the significant historical precedent that other similar joinder actions resulted in the need for additional counsel, complaints, dockets, discovery disputes, and delay; that a large percentage of former absent class members in those other cases—which overlap with the absent Class members here—have repeatedly demonstrated that they lack the ability and motivation to join; and that this Class is geographically dispersed throughout the country.

---

[97] *See* J. Brendan Day, U.S. Magistrate Judge, Case Management Order (Apr. 2023), available at https://www.njd.uscourts.gov/content/j-brendan-day.

[98] *See, e.g.*, ECFs 1306 (ordering in-person settlement conference and requiring presence of "clients with full settlement authority"), 1277 (ordering in-person conference); Oct. 25, 2019 Minute Entry (setting in-person conference); May 3, 2019 Minute Entry (same).

## IV. CONCLUSION

The District Court's improper advisory opinion denying class certification motion should be vacated and reversed, and the case remanded with instructions to the District Court to adjudicate class certification anew. If this Court affirms the grant of summary judgment, the District Court's class certification opinion should still be vacated for the reasons set forth above.

October 29, 2024

Respectfully submitted,

*/s/ David F. Sorensen*
David F. Sorensen (PA Bar No. 57766)
Caitlin G. Coslett (PA Bar No. 306915)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
215-875-3000
dsorensen@bm.net
ccoslett@bm.net

Bruce E. Gerstein
Kimberly Hennings
GARWIN GERSTEIN & FISHER LLP
88 Pine Street, 10th Floor
New York, NY 10005
bgerstein@garwingerstein.com
khennings@garwingerstein.com

Peter S. Pearlman
Matthew F. Gately
COHN LIFLAND PEARLMAN
 HERMANN & KNOPF LLP
Park 80 West, Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
psp@njlawfirm.com
mfg@njlawfirm.com

*Counsel for Direct Purchaser Class
Plaintiffs/Appellants*

## CERTIFICATE OF BAR MEMBERSHIP

In accordance with Local Rule of Appellate Procedure 28.3(d), I certify that I am a member of the bar of the United States Court of Appeals for the Third Circuit.


/s/ David F. Sorensen
David F. Sorensen

## CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(A) AND LOCAL RULE 31.1(C)

1.      This brief contains 12,907 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it has been prepared in a proportionately-spaced typeface using Microsoft Word in Times Roman, 14-pt font for text and footnotes.

3.      The text of the electronic pdf version of this brief is identical to the text in the paper copies.

5.      SentinelOne, version 23.4.4.223, was used to scan the pdf version of this brief and no virus was detected.

Dated: October 29, 2024

*/s/ David F. Sorensen*
David F. Sorensen

**CERTIFICATE OF SERVICE**

I, David F. Sorensen, certify that counsel for Appellees are Filing Users of the Court's CM/ECF system, and that on this 29th day of October, 2024, this Brief was served by filing it on the Court's CM/ECF system. I further certify that seven hard copies of this Brief will be delivered to the Office of the Clerk for the United States Court of Appeals for the Third Circuit.

*/s/ David F. Sorensen*
David F. Sorensen